**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 07-cv-02106-CMA

ANNETTE HOGARTH,
SSN: XXX-XX-2414,

      Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

---

**ORDER AND MEMORANDUM OF DECISION**

---

This is a social security benefits appeal brought under 42 U.S.C. § 405(g).

Plaintiff Annette Hogarth challenges the final decision of Defendant, the Commissioner

of Social Security ("Commissioner"), denying her application for social security disability

and supplemental security income benefits. The denial was affirmed by an

administrative law judge ("ALJ"), who ruled that Plaintiff was not disabled within the

meaning of the Social Security Act ("Act"). Plaintiff argues the ALJ committed two

errors:

    (1)    The ALJ failed to properly evaluate Ms. Hogarth's obesity at Step 3 of the

            sequential evaluation;

    (2)    The ALJ failed to properly evaluate Ms. Hogarth's obesity at Step 4 of the

            sequential evaluation.

Plaintiff requests an order granting a favorable decision or an order reversing and remanding the unfavorable decision.

## I.  FACTS

### 1.    BACKGROUND

Plaintiff was born on October 25, 1966, and was 38 years old at the onset of her alleged disability.  (Admin. R. at 161 filed December 19, 2007 [hereinafter "Admin. R."].)  Plaintiff has a high school education and has worked in the vocationally relevant past as starter-dispatcher, telephone order clerk, cashier, security guard, and resident care aide.  *Id.* at 229, 234, 278.  Plaintiff alleges that she became unable to work beginning on March 2, 2005, due to asthma and emphysema.  *Id.* at 224-25.

### 2.    MEDICAL EVIDENCE

Both knees cause Plaintiff pain.  On March 2, 2005, Plaintiff underwent left knee arthroscopy to repair a medial meniscus tear in her left knee, performed by John Watkins, M.D.  *Id.* at 291-292.  On June 3, 2005, she was released by Thomas Lynch, M.D., to return to work without restrictions.  *Id.* at 311.  Even so, she claims to suffer from ongoing post-surgical knee pain.  *Id.* at 364-367.  Plaintiff's right knee pain is apparently related to degenerative changes in a joint.  *Id.* at 367.

Plaintiff suffers from asthma, which has required multiple hospitalizations and two intubations.  *Id.* at 364-367.  She has environmental triggers including rain, humidity, dust, and pollution.  *Id.* at 364.  Plaintiff requested work-related restrictions secondary to her asthma from Alyssa Shaw, M.D., and in May 2005, Dr. Shaw certified that she

should avoid humidity, harsh chemicals, walking longer than 20 minutes at a time, lifting more than 100 pounds, and working the night shift due to her need for oxygen while sleeping. *Id.* at 298. She has been using a 1-liter nasal cannula of oxygen since November, 2001. *Id.* at 365.

Plaintiff is morbidly obese. On July 27, 2005, Plaintiff underwent a physical consultive examination performed by Sepeideh Nouhi, M.D, at which time she measured 5 '7 " and weighed 485 pounds. *Id.* at 364-366. Dr. Nouhi noted that she used a cane as an assistive device and was wearing oxygen by nasal cannula. Plaintiff's pulmonary function was tested and significantly improved following use of a brochodilator. *Id.* at 374.

Plaintiff's record has been reviewed by a couple State agency physicians. In August 2005, Dr. Alan Ketelhoun, M.D., a State agency physician, reviewed Plaintiff's medical records, including Dr. Nouhi's report. Based on his review, Dr. Ketelhoun found that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday. *Id.* at 281-90. In September 2005, Dr. Edward Canham, M.D., another State agency physician, reviewed Plaintiff's medical record. He reduced Plaintiff's ability to stand and/or walk to 2 hours in an 8-hour workday to account for her oxygen use. *Id.* at 282, 288.

In September 2006, Plaintiff visited her family physician, Dr. Rachel Busse, M.D., for an examination. Plaintiff weighed 500 pounds. Regarding her obesity, Dr. Busse

noted that Plaintiff was to be seen by Dr. Dickinson's office the following day to discuss the gastric bypass surgery.  Dr. Busse was "hopeful that the gastric bypass will be a very good option for this patient."  Dr. Busse noted that Plaintiff had a "permanent disability until she is able to obtain a gastric bypass."  But she did not anticipate that Plaintiff would require permanent long-term disability, as she attributed most of Plaintiff's health problems to her weight.  *Id.* at 679-680.  Dr. Busse's hopes notwithstanding, at the time of the examination Plaintiff was wheelchair-bound and stated she was unable to stand or walk for more than five minutes at a time.  *Id.* at 679.

Dr. Busse found that due to Plaintiff's morbid obesity, knee osteoarthritis, asthma, and carpal tunnel syndrome, Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk (with normal breaks) less than 2 hours in an 8-hour workday, and had no limits in her ability to sit (with normal breaks) during an 8-hour workday.  *Id.* at 388.  However, on the next page Dr. Busse states that Plaintiff would need to lie down 2 - 3 times during a work shift.  *Id.* at 389.  She attributed this need to Plaintiff's morbid obesity, knee osteoarthritis, and asthma.

On October 30, 2006, Plaintiff underwent gastric bypass surgery performed by Dr. James Dickinson, M.D.  *Id.* at 716.  At a follow-up on November 29, 2006, Dr. Dickinson reported that Plaintiff had lost 39 pounds and was "doing very well." *Id.* at 714.  She was playing volleyball and doing aqua aerobics, and no longer needed a walker.  At a follow-up on January 3, 2007, Dr. Dickinson noted that Plaintiff had lost 56 pounds and was "doing great".  She was ambulating well, not using her walker, and

used oxygen only at night.  *Id.* at 713.  Dr. Dickinson wrote that, "Certainly all of her

medical problems are improving."   At the administrative hearing on January 23, 2007

Plaintiff weighed 468 pounds, down from a peak of 507 pounds.  *Id.* at 754.

**3.      PROCEDURAL HISTORY**

On May 16, 2005, Plaintiff filed an application for disability insurance benefits and

supplemental security income benefits.  *Id.* at 215-17, 722-25.  The Social Security

Administration denied Plaintiff's applications, and on October 21, 2005, Plaintiff

requested a hearing before an ALJ.  *Id.* at 187.

**A.      Administrative Hearing**

On January 23, 2007, the ALJ held a hearing, at which Plaintiff testified.  *Id.* at

752-790.  Plaintiff's appearance and testimony at the hearing conflicted with some of

the medical evidence.  Plaintiff appeared at the hearing, via video conference, with a

walker and oxygen.  *Id.* at 758.  She testified that she could only walk 20 feet at one

time and lift 15 to 20 pounds.  *Id.* at 770.  She also said she was unable to perform

household chores or even dress herself and generally sat all day with a nap in the

afternoon.  *Id.* at 760-765.

A vocational expert (VE), Mr. William Tysdal, also testified at the hearing.  *Id.* at

786-90.  He opined on a series of hypothetical questions posed by the ALJ.  *Id.*  The VE

was asked whether an individual with the following characteristics could perform any of

Plaintiff's past relevant work:  a person of Plaintiff's age, education, and past work

experience, able to lift and carry 10 pounds occasionally and less than 10 pounds

frequently, both of which need to be accomplished with a use of a walker; stand and or

walk for up to 2 hours a day with normal breaks, sit for up to 6 hours a day with normal

breaks; alternative between sitting and standing or walking every half-hour as

necessary; occasionally climb stairs and ramps; never climb ladders or scaffolds, stoop,

kneel, crouch, or crawl; occasionally reach overhead or above-shoulder level with the

left non-dominant arm; no concentrated exposure to extreme cold or heat, dampness

or humidity, noise or vibration, or pulmonary irritants; and no exposure hazards of the

workplace such as unprotected heights, dangerous machinery, etc.  *Id.* 788-89.  The VE

answered that two of Plaintiff's former occupations, taxicab starter and telephone order

clerk, are sedentary exertionally and could be accomplished by that hypothetical

person.  *Id.* at 789-90.  The ALJ then added another condition.  Would there be any jobs

available in the national or regional economy for the same worker if, in addition to the

limitations already mentioned, she also needed to lie down for more than an hour-and-

a-half per 8-hour shift?  The VE answered "no."  *Id.*

>    **B.    Administrative Decision**

On February 1, 2007, the ALJ ruled that Plaintiff was not disabled within the

meaning of the Social Security Act.  Specifically, the ALJ found:

>    1.    The claimant meets the insured status requirements of the Social
>          Security Act through September 30, 2009.
>
>    2.    The claimant has not engaged in substantial gainful activity since
>          March 2, 2005, the alleged onset date.

3.    The claimant has a history of left knee arthroscopy, asthma and morbid obesity, impairments considered to be "severe" under the Social Security Regulations.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    The claimant retained an RFC for a sedentary exertional level, who can lift and carry 10 pounds occasionally and less than10 pounds frequently, but both which need to be accomplished with a use of a walker, who can stand and or walk for at least 2 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, who needs to alternate between sitting and standing/walking every 30 minutes or so to relieve discomfort, who can occasionally climb stairs and ramps but should not be required to climb ladders or scaffolds, who should not be required to stoop, kneel, crouch, or crawl, and can occasionally reach overhead or above-shoulder level with the left non-dominant arm, who should not be subjected to concentrated exposure to extreme cold or heat, dampness or humidity, noise, vibration, or pulmonary irritants, and should not be subjected to hazards of the workplace such as unprotected heights, dangerous machinery and things of that nature.

6.    The claimant is capable of performing past relevant work as a taxi-cab starter-dispatcher and telephone order clerk.  This work does not require the performance of work-related activities precluded by the claimant's RFC.

7.    The claimant has not been under a "disability," as defined in the Social Security Act from March 2, 2005 through February 1, 2007.

*Id.* at 156-61.  The ALJ also found Plaintiff lacked credibility.  He detailed several

discrepancies between Plaintiff's assertions and the medical evidence.  In particular,

he gave great weight to the opinions of Dr. Dickinson, the surgeon who performed

Plaintiff's gastric bypass surgery.  Dr. Dickinson saw Plaintiff twenty days before the

administrative hearing and reported that Plaintiff had lost 56 pounds, was "doing great,

not using her walker, uses oxygen only at night, ambulating well." In contrast to that

opinion, Plaintiff appeared at the hearing using a walker and testified she could only

walk 20 feet at a time.  The ALJ went on to detail several other inconsistencies between

Plaintiff's testimony regarding her obesity and doctors' opinions.  *Id.* at 158-160.

### C.      Plaintiff's Appeal

On August 10, 2007, the Appeals Council denied Plaintiff's request for review,

thereby rendering the ALJ's decision the final administrative decision for purposes of

judicial review.  *Id.* at 6-10.

On October 8, 2007, Plaintiff filed a complaint in this court challenging the

Commissioner's denial of disability benefits.  On March 17, 2008, Plaintiff filed her

opening brief.  Defendant filed a brief in response on April 18, 2008.  Plaintiff filed a

reply brief on May 16, 2008.

## II.  ANALYSIS

### 1.      STANDARD OF REVIEW

Section 405(g) of the Social Security Act establishes the scope of this court's

review of the Commissioner's denial of disability insurance benefits and supplemental

security income benefits.  *See* 42 U.S.C. § 1383(c)(3)(2006)(incorporating review

provisions of 42 U.S.C. § 405[g]).  Section 405(g) provides, in relevant part, that:

> [t]he findings of the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive, and where a claim
> has been denied by the Commissioner of Social Security or a decision is
> rendered under subsection (b) of this section which is adverse to an
> individual who was a party to the hearing before the Commissioner of
> Social Security, because of failure of the claimant or such individual to

> submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations.

42 U.S.C. § 405(g) (2006).  Thus, this court's review is limited to determining whether the record as a whole contains substantial evidence supporting the Commissioner's decision.  *See id.*; *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992).  The court must uphold the Commissioner's decision if it is supported by substantial evidence.  *See Dollar v. Bowen*, 821 F.2d 530, 532 (10th Cir. 1987).  This court cannot reweigh the evidence nor substitute its judgment for that of the ALJ.  *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir. 1987).  That does not mean, however, that the court's review is merely cursory.  To find that the ALJ's decision is supported by substantial evidence, the record must include sufficient relevant evidence that a reasonable person might deem adequate to support the ultimate conclusion. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).  A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it.  *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985).  The ALJ's decision is also subject to reversal for application of the wrong legal standard.  *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Frey*, 816 F.2d at 512.

**2.      EVALUATION OF DISABILITY**

The qualifications for disability insurance benefits under the Social Security Act are that the claimant meets the insured status requirements, is less than sixty-five years of age, and is under a "disability."  *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2006).

The Commissioner has established a five-step process to determine whether a claimant qualifies for disability-insurance benefits.  *See* 20 C.F.R. § 404.1520 (2008); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five-step sequence).  That process requires the adjudicator to consider whether a disability claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy.  *Williams*, 844 F.2d at 750-52; *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof for step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007.)  If a decision regarding the claimant's disability can be reached at any step in the process, further evaluation is unnecessary.  *Williams*, 844 F.2d at 750.

**3.     DISABILITY DETERMINATION**

Plaintiff argues that the ALJ's determination of non-disability was erroneous because the ALJ failed to properly evaluate Plaintiff's obesity at Steps 3 and 4 of the sequential evaluation.  Pl.'s Opening Br. at 3.

**A.     The ALJ's Evaluation of Ms. Hogarth's Obesity At Step 3**

At step three of the process, the adjudicator is required to consider whether the impairments that enabled the claimant to survive step two meet or equal a listed impairment.  *Barnhardt v. Thomas*, 540 U.S. 20, 24-25 (2003); *Lax*, 489 F.3d at 1084. The Social Security Administration also requires that the adjudicator consider the effect of obesity in combination with the claimant's other impairments.  *See* Soc. Sec. R. 02-1p, 2000 WL 628049.  The ruling states:

> Obesity may be a factor in both "meets" and "equals" determinations.
>
> Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing.  We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing.  For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing.  This is especially true of musculoskeletal, respiratory, and cardiovascular impairments.  It may also be true for other coexisting or related impairments, including mental disorders.

Here, the ALJ concluded that Plaintiff's obesity was not an impairment within the meaning of the Act, even when considered in combination with her other impairments.

Plaintiff contends the ALJ erred at step three because he failed to adequately consider Plaintiff's obesity.  In particular, Plaintiff contends that (1) her obesity in

combination with her knee problems should have met or equaled the listing at 1.02A,

which covers musculoskeletal impairments (Pl. Reply Br. at 1), and (2) her obesity

in combination with her asthma should have met or equaled the listing at 3.03B

(P. Opening Br. at 5), which covers respiratory impairments.  Defendant argues the

ALJ did a sufficient job on both counts.

### I.        Musculoskeletal Impairments - Listing 1.02A

Plaintiff claims that the ALJ erred in determining that Plaintiff did not meet or

equal listing 1.02A, which states:

> 1.02 Major dysfunction of a joint(s)(due to any cause): Characterized by gross
> anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis,
> instability) and chronic joint pan and stiffness with signs of limitation of motion
> or other abnormal motion of the affected joint(s), and findings on appropriate
> medically acceptable imaging of joint space narrowing, bony destruction, or
> ankylosis of the affected joint(s).  With:
> A. Involvement of one major peripheral weigh-bearing joint (i.e., hip, knee,
> or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

(Pl. Reply Br. at 1).  Plaintiff claims her left knee pain, in combination with her

obesity, meets the listing at 1.02A, with her obesity causing her inability to ambulate

effectively as defined by 1.00B2b.  (Pl. Opening Br. at 5).

The ALJ begins his analysis at step three by introducing obesity and its potential

effects on the musculoskeletal system.  Admin. R. at 157 ¶ 1.  He acknowledges that

the combined effects of obesity with musculoskeletal impairments can be greater than

either one considered separately.  At the bottom of that paragraph he concludes his

analysis by stating "the undersigned has considered any additional and cumulative effects of obesity."  That is the extent of the ALJ's discussion regarding Plaintiff's obesity at step three.  This case turns on the adequacy of that discussion.

SSR 02-01p provides guidance regarding what an ALJ should consider at step three of the process.  Soc. Sec. R. 02-01p, 2000 WL 628049, at * 6.  It describes the potential effects of obesity and states that obesity, either by itself or in connection with other impairments, may meet or equal a listed impairment.  *Id.*  It also states that an ALJ should not make assumptions on the impact of obesity and that, as with other impairments, the ALJ is to explain his conclusions.  *Id.* at 6-7.

The SSR -2-01p ruling provides two guiding principles: 1) obesity is an impairment with uncertain effects, and 2) the ALJ must explain how he reached his conclusions on whether obesity caused any limitations.  *See* Soc. Sec. Rul. 02-01p at *7.  Thus, it is clear the ALJ must explain his conclusions; the question becomes, then, what is an adequate explanation?  To help define the boundaries of what's adequate, the Court considers a case with facts similar to the instant case.  The court in *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008)(unpublished), reversed and remanded when it found that "the ALJ failed to give adequate consideration to the effect of {Claimant's} obesity in combination with her other severe impairments."  The court elaborated by highlighting certain portions of Soc. Sec. R. 02-1p, affirming that an ALJ must not make assumptions about the severity of a claimant's obesity because obesity in combination with another impairment *may or may not* increase the severity or

functional limitations of the other impairment. *Id.* (citing Soc. Sec R. 02-1p, 2000 WL 628049, at * 6)(emphasis added)).  If an ALJ fails to discuss a given impairment or its effect in combination with another, he gives the impression he is making assumptions about the severity of those impairments.  A reviewing court is then left to speculate about the ALJ's reasoning because it was not explained.

The term "may or may not" highlighted in *Hamby* suggests the uncertainty regarding the effects of obesity.  *See Hamby*, 260 Fed. Appx at 112.  If the ALJ concludes that a claimant's obesity affects the severity of another impairment, it goes without saying that such a conclusion must be explained.  Conversely, if the ALJ concludes that a claimant's obesity does not affect the severity of other impairments, that conclusion must also be explained.  *See Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir 1993).  The ALJ in the instant case, similar to the ALJ in *Hamby*, 260 Fed. Appx. at 112, failed to discuss the effect of Plaintiff's obesity on her other severe impairments, namely her history of left knee arthroscopy and asthma.

### ii.    *Respiratory Impairments - Listing 3.03B*

In her brief Plaintiff makes a passing gesture at arguing that her history of asthma, either itself or in combination with her obesity, meets or equals the listings under 3.03B.  Pl. Opening Br. at 5.  However, because Plaintiff provided no analysis in support of this assertion, it will not be considered further.  Moreover, any concerns Plaintiff has regarding the incompleteness of the ALJ's decision should be resolved in the analysis under part I.

**B.      The ALJ's Evaluation of Ms. Hogarth's Obesity at Step 4**

Step four of the sequential process requires the claimant to show that the

impairment or combination of impairments prevent her from performing her past work.

*Lax*, 489 F.3d at 1084.  In step four of his analysis, the ALJ found that Plaintiff had failed

to meet her burden of demonstrating that her impairment, including her obesity,

prevented her from performing her past work.

As discussed in section 3.a.i., above, an ALJ's failure to adequately consider and

explain his conclusions regarding the impact of obesity can be fatal to his decision.  In

*Baker v Barnhardt*, 84 Fed. Appx. 10, 14 (10th Cir. 2003), the court faced with similar

facts remanded after the ALJ failed to discuss the effect the claimant's obesity had on

her other functions.  This error occurred at step four of the process, when the ALJ was

evaluating the plaintiff's RFC.  *Id*. at 14.  However, regardless of whether the ALJ is

engaged at step three or step four of the process, his task with respect to a claimant's

obesity is the same.  The *Baker* court quoted the requirement of SSR 02-01p that the

ALJ must "explain how {he} reached {his} conclusions on whether obesity caused any

physical or mental limitations."  *Id*. (quoting Soc. Sec. Rul. 02-1p, 2000 WL 628049, at

* 7)).  If the ALJ gives too brief a treatment, he risks reversal.  It is for these reasons

that upon remand the ALJ is instructed to adequately explain his conclusions with

respect to the impact or lack thereof of Plaintiff's obesity.

### III.  CONCLUSION

An ALJ's decision will be affirmed if his or her factual findings are supported by substantial evidence and the analysis is free of legal error.  *See Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006).  In this case, the Court finds that the ALJ's factual findings, to the extent detailed in his opinion, were supported by substantial evidence. However, the ALJ committed legal error when he failed to explain the impact of Plaintiff's obesity at steps three and four of the sequential process.

It is therefore ORDERED that the Commissioner's decision is REVERSED, and the case REMANDED for proceedings consistent with this opinion.

DATED:  April __9__, 2009

BY THE COURT:

_____

CHRISTINE M. ARGUELLO
United States District Judge